UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF INDIANA
FORT WAYNE DIVISION

| | |
|---|---|
| CAROL A. BATES, | ) |
| | ) |
|     Plaintiff, | ) |
| | ) |
|   v. | )   CIVIL NO. 2:11cv361 |
| | ) |
| MICHAEL J. ASTRUE, | ) |
| Commissioner of Social Security | ) |
| | ) |
|     Defendant. | ) |

OPINION AND ORDER

This matter is before the court for judicial review of a final decision of the defendant Commissioner of Social Security Administration denying Plaintiff's application for Supplemental Security Income (SSI) as provided for in the Social Security Act. 42 U.S.C. §416(I); 42 U.S.C. §423; 42 U.S.C. §§ 1382, 1382c(a)(3). Section 205(g) of the Act provides, inter alia, "[a]s part of his answer, the [Commissioner] shall file a certified copy of the transcript of the record including the evidence upon which the findings and decision complained of are based. The court shall have the power to enter, upon the pleadings and transcript of the record, a judgment affirming, modifying, or reversing the decision of the [Commissioner], with or without remanding the case for a rehearing." It also provides, "[t]he findings of the [Commissioner] as to any fact, if supported by substantial evidence, shall be conclusive. . . ." 42 U.S.C. §405(g).

The law provides that an applicant for disability insurance benefits must establish an "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to last for a continuous period of not less than 12 months. . . ." 42 U.S.C. §416(i)(1); 42 U.S.C. §423(d)(1)(A). A physical or mental

impairment is "an impairment that results from anatomical, physiological, or psychological abnormalities which are demonstrable by medically acceptable clinical and laboratory diagnostic techniques." 42 U.S.C. §423(d)(3). It is not enough for a plaintiff to establish that an impairment exists. It must be shown that the impairment is severe enough to preclude the plaintiff from engaging in substantial gainful activity. Gotshaw v. Ribicoff, 307 F.2d 840 (7th Cir. 1962), cert. denied, 372 U.S. 945 (1963); Garcia v. Califano, 463 F.Supp. 1098 (N.D.Ill. 1979). It is well established that the burden of proving entitlement to disability insurance benefits is on the plaintiff. See Jeralds v. Richardson, 445 F.2d 36 (7th Cir. 1971); Kutchman v. Cohen, 425 F.2d 20 (7th Cir. 1970).

Given the foregoing framework, "[t]he question before [this court] is whether the record as a whole contains substantial evidence to support the [Commissioner's] findings." Garfield v. Schweiker, 732 F.2d 605, 607 (7th Cir. 1984) citing Whitney v. Schweiker, 695 F.2d 784, 786 (7th Cir. 1982); 42 U.S.C. §405(g). "Substantial evidence is defined as 'more than a mere scintilla. It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" Rhoderick v. Heckler, 737 F.2d 714, 715 (7th Cir. 1984) quoting Richardson v. Perales, 402 U.S. 389, 401, 91 S.Ct. 1410, 1427 (1971); see Allen v. Weinberger, 552 F.2d 781, 784 (7th Cir. 1977). "If the record contains such support [it] must [be] affirmed, 42 U.S.C. §405(g), unless there has been an error of law." Garfield, supra at 607; see also Schnoll v. Harris, 636 F.2d 1146, 1150 (7th Cir. 1980).

In the present matter, after consideration of the entire record, the Administrative Law Judge ("ALJ") made the following findings:

    1.    The claimant has not engaged in substantial gainful activity since April 12,

    2007, the application date (20 CFR § 416.971 *et seq*).

2.  The claimant has the following severe impairments: cervical disc herniation and major depression (20 CFR § 416.920(c)).

3.  The claimant does not have an impairment or combination of impairments that meets or medically equals one of the listed impairments in 20 CFR Part 404, Supbart P, Appendix 1 (20 CFR §§ 416.920(d), 416.925, and 416.926).

4.  After careful consideration of the entire record, I find that the claimant has the residual functional capacity to perform light work as defined in 20 CFR § 416.967(b).  The claimant is limited to occasionally climbing  of [sic] ladders, ropes, or scaffolds.  The claimant retains the ability to understand, remember, and carry out simple, routine tasks.  The claimant can concentrate, persist, and work on a sustained basis.  The claimant can interact appropriately with others.  The claimant can tolerate ordinary job routines and changes.

5.  The claimant is unable to perform any past relevant work (20 CFR § 416.965).

6.  The claimant was born on September 29, 1958 and was 48 years old, which is defined as a younger individual age 18-49, on the date the application was filed.  The claimant subsequently changed age category to closely approaching advanced age (20 CFR § 416.963).

7.  The claimant has at least a high school education and is able to communicate in English (20 CFR §416.964).

8.  Transferability of job skills is not material to the determination of disability because using the Medical-Vocational Rules as a framework supports a finding that the claimant is "not disabled," whether or not the claimant has transferable job skills (See SSR 82-41 and 20 CFR Part 404, Subpart P, Appendix 2).

9.  Considering the claimant's age, education, work experience, and residual functional capacity, there are jobs that exist in significant numbers in the national economy that the claimant can perform (20 CFR  416.969 and 416.969(a)).

10.  The claimant has not been under a disability, as defined in the Social Security Act, since April 12, 2007, the date the application was filed (20 CFR § 416.920(g)).

(Tr. 16-23).

  Based upon these findings, the ALJ determined that Plaintiff was not entitled to disability

insurance benefits. The ALJ's decision became the final agency decision when the Appeals Council denied review.  This appeal followed.

Plaintiff filed her opening brief on January 2, 1012.  On May 2, 2012, the defendant filed a memorandum in support of the Commissioner's decision, and on June 1, 2012, Plaintiff filed her reply.  Upon full review of the record in this cause, this court is of the view that the ALJ's decision should be affirmed.

A five step test has been established to determine whether a claimant is disabled.  See Singleton v. Bowen, 841 F.2d 710, 711 (7th Cir. 1988); Bowen v. Yuckert, 107 S.Ct. 2287, 2290-91 (1987).  The United States Court of Appeals for the Seventh Circuit has summarized that test as follows:

> The following steps are addressed in order:  (1)  Is the claimant presently unemployed? (2)  Is the claimant's impairment "severe"? (3)  Does the impairment meet or exceed one of a list of specific impairments?  (4)  Is the claimant unable to perform his or her former occupation?  (5)  Is the claimant unable to perform any other work within the economy?  An affirmative answer leads either to the next step or, on steps 3 and 5, to a finding that the claimant is disabled.  A negative answer at any point, other than step 3, stops the inquiry and leads to a determination that the claimant is not disabled.

Nelson v. Bowen, 855 F.2d 503, 504 n.2 (7th Cir. 1988); Zalewski v. Heckler, 760 F.2d 160, 162n.2 (7th Cir. 1985); accord Halvorsen v. Heckler, 743 F.2d 1221 (7th Cir. 1984).  From the nature of the ALJ's decision to deny benefits, it is clear that step five was the determinative inquiry.

Plaintiff filed an application for Supplemental Security Income on April 25, 2007, alleging disability beginning on February 19, 2004. (Tr. 113-19.) Her claim was denied initially on August 21, 2007, and upon reconsideration was denied on February 29, 2008. (Tr. 58-59.)

Plaintiff requested a hearing, which was heard by Administrative Law Judge ("ALJ") Sherry Thompson on April 6, 2010. (Tr. 29-55.) The ALJ issued a written decision denying benefits on June 21, 2010. (Tr. 11-28.) Plaintiff requested review by the Appeals Council, but was denied on July 26, 2011, leaving the ALJ's decision as the final decision of the Commissioner. (Tr. 1-4.)

As of the date of the hearing, Plaintiff was 51 years old. (Tr. 33.) Plaintiff was diagnosed with degenerative disc disease, herniations in her cervical spine, and cervical radiculopathy. (Tr. 211, 233, 254, 262, 291, 339, 348, 423.) The herniations and the accompanying radiculopathy were caused by a motor vehicle accident in 2004. (Tr. 240, 250, 278, 348, 354.) MRI imaging demonstrated disc bulging at the L5-S1, L4-L5, and L3-L4 levels and herniation at the C6-C7 level. (Tr. 278, 282, 291, 354, 358, 470.) These impairments caused constant severe pain that Plaintiff described as "stabbing" or "aching" and radiated into her arms and legs, causing tingling and numbness in addition to the pain. (Tr. 211, 243, 253, 260, 369, 400, 508.) She rated her pain as a minimum of 7 or 8 out of 10 and as high as a 10 out of 10 on a pain scale. (Tr. 44-45, 228, 268, 423, 454.) This pain in her back, legs, and arms limited Plaintiff's ability to sit or stand for more than 20 minutes at a time, walk more than 2 blocks, kept her from sitting still, sleeping, and prevented her from getting out of a chair, bending, or crouching. (Tr. 38, 41, 167, 334, 463, 477.) She sought to resolve her pain through painkillers, muscle relaxers, epidural injections, physical therapy, and a TENS unit[1], but these treatments did not alleviate her pain. (Tr. 38, 44-45, 232, 324, 326, 358, 394, 463, 508.) Her prescribed medications caused drowsiness during the day and weight gain of approximately 70 pounds over four years. (Tr. 36-37, 191, 383-85.)

Plaintiff was diagnosed with a ganglion cyst on her right hand near her thumb. (Tr. 39,

5

450, 452, 470.) This cyst caused swelling and pain in her wrist and hand, was painful when bumped, and limited the amount of writing or typing she was able to perform. (Tr. 39-40, 247, 249, 253, 404-05, 450, 452, 470, 520-21.) Plaintiff was diagnosed with major depression, with GAF scores recorded as low as 42 and as high as 55. (Tr. 446, 477, 483-89, 526.) Her depression affected her ability to concentrate on tasks, caused her to be forgetful, made thinking straight and interpersonal relationships difficult, and interfered with her social functioning. (Tr. 42-44, 256, 461, 483, 485-89, 526.)

     The State Agency physician's physical RFC assessment noted Plaintiff's cervical disc herniation and opined an RFC of light work with the postural limitations of occasionally balancing and limited sitting, standing, or walking for 6 hours out of an 8 hour workday. (Tr. 360-66.) Plaintiff's treating physician, Dr. Cordero, opined that Plaintiff could sit for about 30 minutes at a time, stand for 45 minutes at a time and walk 2 bocks, and that she could sit, stand, or walk for a maximum of 2 hours in an 8 hour workday. (Tr. 384.) Plaintiff's treating psychiatrist, Dr. Shahzaad, opined that Plaintiff had a GAF score that ranged between 50 and 55, had difficulty concentrating, a fair memory and ability to understand, but that her ability to perform at a consistent pace was poor and that she had moderate limitations in her activities of daily living and in social functioning. (Tr. 486-89.) Dr. Shahzaad further noted that Plaintiff had experienced at least three episodes of decompensation. (Tr. 489.) The Vocational Expert ("VE") testified that if Plaintiff was limited in her ability to use her right hand that would completely preclude jobs at the light work level and would significantly reduce the number of available jobs at the sedentary work level. (Tr. 50-51, 53.)

     The ALJ asked the vocational expert to consider a hypothetical individual who was the

same age as Plaintiff and who had the same educational background and work experience (Tr. 49). The individual could perform light work, except that she could only occasionally climb ladders, ropes, or scaffolds (Tr. 49). She could understand, remember, and carry out simple, routine tasks; could concentrate, persist, and work on a sustained basis; and could interact appropriately with others (Tr. 49). She could tolerate ordinary job routines and changes, and she could use her hands frequently for handling, fingering, and feeling (Tr. 49). The vocational expert testified that the hypothetical individual could not perform any of Plaintiff's past work but that she could perform the following light, unskilled jobs: production assembler (with approximately 8,000 positions existing in the regional economy); small parts assembler (6,000 positions); and electronics worker (1,000 positions) (Tr. 50). If Plaintiff were limited to sedentary work but with the same additional limitations outlined above, and with an ability to use her right hand only occasionally, she could perform work as a call out operator (8,000 positions), information clerk (4,000 positions), and information clerk (500 positions) (Tr. 50-51).

     The ALJ found that Plaintiff had not engaged in substantial gainful activity since she applied for SSI and that she had severe impairments, but that her impairments did not, singly or in combination, meet or medically equal any of those listed the Listing of Impairments at 20 C.F.R. pt. 404, subpt. P, app. 1,(Tr. 16-17). The ALJ found that Plaintiff's statements regarding the intensity, persistence, and limiting effects of her symptoms were not credible (Tr. 19). The ALJ found that, Plaintiff had the residual functional capacity$_2$ (RFC) to perform light work that required only occasional climbing of ladders, ropes, or scaffolds (Tr. 18). She could understand, remember, and carry out simple and routine tasks; concentrate, persist, and work on a sustained basis; interact appropriately with others; and tolerate ordinary job routines and changes (Tr. 18).

The ALJ found that Plaintiff could not perform her past work but that she could perform a significant number of jobs in the national economy and was therefore not disabled (Tr. 22-24). *See* 20 C.F.R. § 416.920(a)(4)(v).

The Commissioner's final decision in this case is subject to review pursuant to 42 U.S.C. § 405(g), as amended, which provides that "[t]he findings of the Commissioner of Social Security as to any fact, if supported by substantial evidence, shall be conclusive." Substantial evidence is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. 389, 401 (1971). The ALJ has the duty to weigh the evidence, resolve material conflicts, make independent findings of fact, and determine the case accordingly. *Perales*, 402 U.S. at 399-400. The Court "will uphold an ALJ's decision if it is reached under the correct legal standard and if it is supported by substantial evidence." *Schmidt v. Apfel*, 201 F.3d 970, 972 (7th Cir. 2000). "Because the Commissioner is responsible for weighing the evidence, resolving conflicts, and making independent findings of fact, [the] Court may not decide the facts anew, reweigh the evidence, or substitute its own judgment for that of the Commissioner to decide whether a claimant is or is not disabled." *Butera v. Apfel*, 173 F.3d 1049, 1055 (7th Cir. 1999).

Even if substantial evidence would support an opposite conclusion, the Commissioner's decision must be upheld if it is supported by substantial evidence. *See Arkansas v. Oklahoma*, 503 U.S. 91, 112 (1992); *Farrell v. Sullivan*, 878 F.2d 985, 990 (7th Cir. 1989). If a court does determine that the ALJ's decision is not supported by substantial evidence and should be reversed, remand, and not an award of benefits, is appropriate unless all factual issues have been resolved and the court can conclude, with some certainty, that the plaintiff is totally disabled.

*See Campbell v. Shalala*, 988 F.2d 741, 744 (7th Cir. 1993). (The determination to award or deny benefits "is essentially a factual finding best left for the [Commissioner] to address in the first instance, unless the record can yield but one supportable conclusion.").

    The ALJ found that Plaintiff had severe impairments, both physical and mental, but she concluded that she could, despite those impairments, perform a limited range of work. Specifically, the ALJ found that Plaintiff could perform light work that required only occasional climbing of ladders, ropes, or scaffolds (Tr. 18). She could understand, remember, and carry out simple and routine tasks; concentrate, persist, and work on a sustained basis; interact appropriately with others; and tolerate ordinary job routines and changes (Tr. 18). With respect to Plaintiff's physical limitations, this RFC finding is consistent with the opinion of Frank Jimenez, M.D., a state agency medical expert who reviewed Plaintiff's entire claim file in August 2007 and concluded that Plaintiff could perform activities consistent with a limited range of light work (Tr. 359-66). The ALJ's RFC finding with respect to Plaintiff's mental limitations was consistent with the record as a whole, which documented diagnoses of depression that responded well to medication.

    Plaintiff argues that the ALJ should have given "controlling weight" to the opinion of her family doctor, Katrina Cordero (Pl.'s Br. at 7-8). On January 9, 2009, Dr. Cordero completed a three-page check-box form on which she checked boxes indicating, inter alia, that Plaintiff could stand and walk for a total of about two hours in an eight-hour workday and could sit for the same amount of time (Tr. 384)–essentially stating that Plaintiff was bedridden half of the time. Dr. Cordero also checked boxes to indicate her opinion that Plaintiff could only rarely lift objects that weighed less than ten pounds and would be absent, on average, more than four days a month

9

(Tr. 385). The law is clear that a treating source's opinion as to the nature and severity of a claimant's impairments is entitled to controlling weight *only* if it is well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with other substantial evidence in the record. 20 C.F.R. § 416.927(d)(2). The ALJ considered Dr. Cordero's opinion, but she reasonably concluded that such extreme limitations were not supported by the objective medical evidence, particularly given the fact that only four days before Dr. Cordero completed her form, Plaintiff had full motor strength, sensory intact, and normal deep tendon reflexes (Tr. 20-21; *see* Tr. 424). The Seventh Circuit has observed that when, as in this case, a doctor sets forth such unexplained and extreme limitations, he might be attempting to help the patient obtain disability benefits. *See Ketelboeter v. Astrue*, 550 F.3d 620, 625 (7th Cir. 2008) ("The treating physician's opinion . . . may also be unreliable if the doctor is sympathetic with the patient and thus 'too quickly find[s] disability.'") (quoting *Stephens v. Heckler*, 766 F.2d 284, 289 (7th Cir.1985)). Plaintiff cites a number of pages from the record that she claims support Dr. Cordero's opinion, but the evidence she points to merely establishes that she had impairments, which the ALJ certainly acknowledged; the evidence does not establish the severity or limiting effects of the impairments. As the Seventh Circuit has noted, the diagnosis of an impairment does not alone establish the severity of the impairment and its resulting limitations. *See Estok v. Apfel*, 152 F.3d 636, 639 (7th Cir. 1998). The Seventh Circuit has also held that "[t]he issue . . . is not the existence of these various conditions of hers but their severity and, concretely, whether . . . they have caused her such severe pain that she cannot work full time." *Carradine v. Barnhart*, 360 F.3d 751, 754 (7th Cir. 2004). Indeed, one of the pages she cites—a form completed in August 2009, apparently by a social worker and countersigned by a

psychiatrist—indicates that she was presently unemployed, rather than disabled, and that she had no difficulties holding a job and no problems at work (Tr. 539).

Regarding her mental limitations, Plaintiff argues that the ALJ should have given greater weight to the opinion of Dr. Shahzaad, her treating psychiatrist (Pl.'s Br. at 9-10). The only opinion that she cites of Dr. Shahzaad, however, is a check-box form that the doctor completed on November 5, 2009, indicating, inter alia, that Plaintiff had poor or no ability to function in two of sixteen mental areas, as well as other limitations that suggested that she was disabled (e.g., projected absence from work more than three times a month) (Tr. 486-89). Plaintiff appears to believe that the ALJ did not give enough weight to Dr. Shahzaad's opinion as that of a treating source because she mistakenly believed that the doctor had treated her for only three months, whereas she began treating with the doctor in August 2009, eight months before the hearing (Pl.'s Br. at 9). However, in evaluating Dr. Shahzaad's opinion, the only relevant time factor is how long Plaintiff had been treating as of the date of the opinion, as of November 5, 2009—which, as the ALJ correctly noted, was only three months after she began treatment.

Plaintiff accuses the ALJ of selectively reviewing Dr. Shahzaad's opinion (Pl.'s Br. at 10), but it is Plaintiff herself who is being selective. While the form completed on November 5, 2009, suggested limitations that could be construed as disabling, the ALJ noted Plaintiff's statement, on December 3, 2009, just one month later, that she was feeling better and more in control of her anger (Tr. 21; *see* Tr. 533). Indeed, two weeks later, Dr. Shahzaad's report, dated December 17, 2009, documented dramatic improvement in Plaintiff's mental condition. Plaintiff told Dr. Shahzaad that she felt better, less irritable and agitated and with fewer mood swings (Tr. 525). She felt more "even-keeled" and denied having any depression (Tr. 525). She denied any

side effects from her medications (Tr. 525). Her mental status examination was generally normal (Tr. 525). Plaintiff's insistence that the ALJ was required to adopt the November 2009 opinion of Dr. Shahzaad simply does not withstand scrutiny of the ALJ's decision or the record.

Plaintiff also contends that, because the ALJ did not adopt Dr. Shahzaad's November 2009 opinion, "she improperly independently analyzed the severity of her depression without the benefit of any mental health practitioner's opinion to support her finding" (Pl.'s Br. at 10). To advance this argument, Plaintiff must, as discussed above, ignore the fact that the ALJ considered Dr. Shahzaad's full treatment of Plaintiff, not simply the single occasion when the doctor was asked to fill out a check-box form. Furthermore, the regulations make clear that the determination of a claimant's RFC at the hearing level is the responsibility of the ALJ alone. 20 C.F.R. § 416.946(c). While an ALJ is entitled to adopt the opinion of a medical source regarding a claimant's RFC, the ALJ's RFC finding and the medical source's opinion...

> are not the same thing. A medical source statement is evidence that is submitted to SSA by an individual's medical source reflecting the source's opinion based on his or her own knowledge, while an RFC assessment is the adjudicator's ultimate finding based on a consideration of this opinion and all the other evidence in the case record about what an individual can do despite his or her impairment(s).

Social Security Ruling 96-5p, 1996 WL 374183, *4. While an adjudicator "may decide to adopt all of the opinions expressed in a medical source statement, a medical source statement must not be equated with the administrative finding known as the RFC assessment." *Id.* at *5. Furthermore, in evaluating RFC, an ALJ "is not required to rely entirely on a particular physician's opinion or choose between the opinions of any of the claimant's physicians." *Schmidt v. Astrue*, 496 F.3d 833, 845 (7th Cir. 2007).

Notwithstanding the ALJ's careful analysis of Dr. Shahzaad's opinion and Plaintiff's mental functioning, Plaintiff argues that the Court should remand this case because of a perceived inconsistency between the ALJ's finding, at steps two and three of the sequential evaluation process, that she had moderate limitations in concentration, persistence, or pace and in social functioning, and the ALJ's RFC finding that she could perform simple, routine tasks (Pl.'s Br. at 10-11; *see* Tr. 17-18). In support of her argument, she cites *O'Connor-Spinner v. Astrue*, 627 F.3d 614, 620-21 (7th Cir. 2010). Plaintiff's argument is meritless. In that case, the most restrictive hypothetical question posed by the ALJ did not include "a limitation on concentration, persistence, or pace, although later in his written decision the ALJ listed this limitation in assessing Ms. O'Connor-Spinner's residual functional capacity." *O'Connor-Spinner*, 627 F.3d at 617-18. It is true that a valid hypothetical question must ordinarily include limitations that an ALJ finds for a claimant's RFC. *See, e.g., Simila v. Astrue*, 573 F.3d 503, 520 (7th Cir. 2009). *See also Packham v. Astrue*, 762 Fed.Supp.2d 1094, 1105, 2011 WL 13531 *10 (N.D. Ill., Jan. 4, 2011) (declining to remand on the basis of *O'Connor-Spinner* where plaintiff "does not contend that the ALJ unfairly characterized her RFC finding when stating the hypothetical"); *see also Herrold v. Astrue*, No. 2:10-CV-489-JD, 2012 WL 967354 *27 (N.D. Ind., Mar. 21, 2012); *Evans v. Astrue*, No. 3:10-CV-432-JD, 2012 WL 951489 *24 (N.D. Ind., Mar. 20, 2012); *Allbritten v. Astrue*, No. 2:11-CV-116, 2012 WL 243566 *7 (N.D., Ind., Jan. 25, 2012).

In this case, however, the hypothetical question was entirely consistent with the ALJ's RFC finding, which, with respect to Plaintiff's mental limitations, stated simply that Plaintiff could understand, remember, and carry out simple and routine tasks; concentrate, persist, and work on a sustained basis; interact appropriately with others; and tolerate ordinary job routines

and changes (Tr. 18). The ALJ did find, earlier in the decision, that Plaintiff had moderate difficulties with regard to concentration, persistence, or pace, but that finding was made in the context of analyzing, at steps two and three, whether Plaintiff's mental condition was severe and whether it met or equaled a listing (Tr. 16-17), and that evaluation is separate from the evaluation of RFC. *See* 20 C.F.R. § 404.1520a(d)(3).

Plaintiff also contends that the ALJ erred by not including manipulative limitations in his RFC finding (Pl.'s Br. at 12). She attempts to support this argument by pointing to evidence that she had a cyst on her right hand (Pl.'s Br. at 12). As noted, though, the diagnosis of an impairment does not establish that the impairment causes functional limitations. Here, the ALJ specifically pointed out that "[m]edical records do not contain medical signs and findings that indicate any limitations manipulatively . . ." (Tr. 20). Notably, Dr. Jimenez, the state agency reviewing medical expert, opined that Plaintiff had no manipulative limitations (Tr. 362).[3]

Plaintiff challenges the ALJ's RFC finding by arguing that the ALJ erred in evaluating the credibility of her allegations (Pl.'s Br. at 13-18). In assessing a claimant's credibility, an ALJ considers a number of factors, including, inter alia, daily activities; the location, duration, frequency, and intensity of symptoms; precipitating and aggravating factors; medications taken; and treatment. 20 C.F.R. § 404.1529(c)(3). Social Security Ruling 96-7p, 1996 WL 374186. Moreover, the determination of credibility is normally considered a factual matter, *Cooter & Gell v. Hartmarx Corp.*, 496 U.S. 384, 402 (1990); an ALJ's credibility finding is entitled to "considerable deference" and will be overturned only if it is "patently wrong." *Prochaska v. Barnhart*, 454 F.3d 731, 738 (7th Cir. 2006) (quoting *Carradine v. Barnhart*, 360 F.3d 751, 758 (7th Cir. 2004)); *see also Herron v. Shalala*, 19 F.3d 329, 335 (7th Cir. 1995) (because "the ALJ

is in the best position to observe witnesses, [courts] usually do not upset credibility determinations on appeal so long as they find some support in the record and are not patently wrong.").

Here, the ALJ discussed numerous factors that led her to question Plaintiff's credibility. She pointed out that diagnostic studies showed only mild to moderate findings (Tr. 20). She also noted a number of discrepancies in Plaintiff's statements—for instance, her allegation that she could walk only one or two blocks (Tr. 38), and her statement to a consultative physician that she tried to walk a mile in the morning and a mile in the afternoon (Tr. 369). The ALJ pointed to a number of other discrepancies in Plaintiff's allegations (Tr. 20).

Plaintiff responds that the discrepancies are "not truly inconsistencies" but "minor discrepancies that can be explained either by Plaintiff's condition worsening over time or are simply not the type of discrepancies that the ALJ can make a negative credibility inference based upon" (Pl.'s Br. at 17). The ALJ expressly stated that the record "showed no significant worsening of her physical or mental impairments" (Tr. 20), and Plaintiff fails to point to evidence that contradicts the ALJ's analysis.

She also fails to identify "the type of discrepancies" that the ALJ improperly considered. Plaintiff contends that "the ALJ made an improper medical inference about the severity of Plaintiff's pain when she noted that Plaintiff could participate in the hearing without overt pain behavior and could focus on the hearing . . ." (Pl.'s Br. at 14). What Plaintiff dismisses as a "medical inference," however, is simply an instance of an ALJ performing the duty she is charged with performing. The Seventh Circuit has long accepted that observations are an important consideration when an ALJ has to assess credibility. *See Powers v. Apfel*, 207 F.3d

15

431, 436 (7th Cir. 2000) ("The hearing officer had an opportunity to observe Powers for an extended period of time and could gauge whether her demeanor, behavior, attitude and other characteristics suggested frankness and honesty and were consistent with the general bearing of someone who is experiencing severe pain."); *see also Diaz v. Chater*, 55 F.3d 300, 308 (7th Cir. 1995); *Herron v. Shalala*, 19 F.3d 329, 335 (7th Cir. 1994).

For most of the rest of her challenge to the ALJ's credibility assessment, Plaintiff relies upon her own statements (*see, e.g.*, Pl.'s Br. at 16-17). Of course, the Agency will consider a claimant's statements about her symptoms, but those statements alone can never establish that the claimant is disabled; there must be medical signs and laboratory findings that show that the individual has impairments that could reasonably be expected to produce the alleged symptoms. 20 C.F.R. § 404.1529(b). Even if the statements are made in the context of a physician's report, an ALJ is not required to adopt a doctor's statement that is based entirely on a claimant's allegations. *Farrell v. Sullivan*, 878 F.2d 985, 989 (7th Cir. 1989) (upholding ALJ's determination that a physician's observations were "mere recitations of [the claimant's] complaints, not objective observations required by the Listings"); *Young v. Secretary of Health & Human Services*, 925 F.2d 146, 151 (6th Cir. 1990) (a physician may not base a medical opinion on a claimant's subjective complaints.).

The ALJ noted that Plaintiff missed several doctor's appointments (Tr. 20; see Tr. 426, 427, 441, 445), and she noted that Plaintiff had not claimed that her medications were ineffective (Tr. 20). Plaintiff responds that her medications "caused her to be drowsy, use the bathroom frequently, and caused significant weight gain" (Pl.'s Br. at 16), but the record pages that she cites, mostly illegible, do not clearly establish such side effects. Moreover, Dr. Shahzaad

expressly stated that no medication side effects were noted (Tr. 487).

Finally, Plaintiff objects to the statement with which the ALJ introduced her analysis of her credibility (Pl.'s Br. at 17; citing Tr. 19). She cites Seventh Circuit and district court cases that criticize similar language: "the claimant's statements concerning the intensity, persistence and limiting effects of these symptoms are not credible to the extent they are inconsistent with the above residual functional capacity assessment" (Tr. 19). However, the Seventh Circuit has recently clarified that the inclusion of such "boilerplate" is not fatal so long as the ALJ does more, explaining his reasoning. *See Richison v. Astrue*, No. 11-2274, 2012 WL 377674 *3 (7th Cir. Feb. 7, 2012) (nonprecedential disposition). As discussed above, the ALJ in this case did explain her reasoning. Because Plaintiff has failed to demonstrate that the ALJ's credibility analysis was "patently wrong," this Court will affirm the ALJ's credibility finding, as well as the ALJ's finding that Plaintiff could perform a limited range of light work.

The ALJ found that Plaintiff could not perform any of her past relevant work but that she could perform a significant number of jobs in the national economy and was therefore not disabled (Tr. 22-24). This finding was supported by the testimony of the vocational expert, who identified approximately 15,000 positions in the regional economy that could be performed by a person with Plaintiff's vocational profile and functional limitations (Tr. 49-50). The ALJ therefore properly concluded that because Plaintiff could perform a significant number of other jobs in the economy, she was not disabled under the terms of the Act and thus not entitled to SSI. *See* 20 C.F.R. § 416.920(a)(4)(v); *Kelley v. Sullivan*, 890 F.2d 961, 965 (7th Cir. 1989) (vocational expert's testimony satisfies Commissioner's burden to produce evidence of a significant number of jobs).    Accordingly, the ALJ's decision will be affirmed.

<u>Conclusion</u>

On the basis of the foregoing, the decision of the ALJ is hereby AFFIRMED.

Entered: August 20, 2012.

                                            s/ William C. Lee
                                            William C. Lee, Judge
                                            United States District Court